UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 07-CV-11807 RGS

WAREHAM FREE LIBRARY, INC. and
PRISCILLA PORTER, MARY NYMAN, HAZEL TABER,
MICHELLE BAUM, SANDRA WHEELER, JOHN LANCI,
MARTHA MAGUIRE, YELENA FARIOLI-BEAUPRE, and
DIANE LAZARUS, Individually and As Trustees of Wareham
Free Library, Inc.

       Plaintiffs / Defendants in Counterclaim /
       Third Party Plaintiffs

v.

THE TOWN OF WAREHAM

       Defendant / Plaintiff in Counterclaim

and

BRENDA ECKSTROM, BRUCE SAUVAGEAU, JOHN
CRONAN, JAMES POTTER, and M. JANE DONAHUE,
Individually and As Members of The Board of Selectmen of
Wareham

       Defendants

v.

FRIENDS OF THE WAREHAM FREE LIBRARY, INC.,

       Defendant in Counterclaim

v.

MASSACHUSETTS INTERLOCAL INSURANCE
ASSOCIATION

       Third Party Defendant

**PLAINTIFFS' MEMORANDUM ON THE ISSUE OF
PLAINTIFFS' FEDERAL CLAIM**

1

Pursuant to this Court's order on January 23, 2008, Plaintiffs submit this Memorandum setting forth the legal basis upon which their Federal claim is asserted.

Plaintiffs have alleged sufficient facts to state a claim against the Town of Wareham Defendants for violation of 42 U.S.C. § 1983.  In brief, Defendants, acting under color of state law, violated Plaintiffs' (1) First Amendment rights to freedom of speech and association and (2) Fourteenth Amendment right to procedural due process by declaring Plaintiffs' tenure as Trustees of the Wareham Free Library ended, without notice and without hearing, in retaliation for Plaintiffs' opposition to proposed municipal budgetary cut for the Library in early 2007.  In support, Plaintiffs state as follows:

### I. THE LAW OF § 1983

"Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights, such as the First Amendment's right to free speech or the Fourteenth Amendment's right to procedural due process.  A claim under § 1983 has two essential elements: the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law."  Gagliardi v. Sullivan, --- F.3d ---, 2008 WL 162470 (1st Cir. January 18, 2008) (Federal Reporter citation not available).

As to the first element, Plaintiffs have specifically alleged that Defendants acted officially, as members of the Board of Selectmen, when they declared that Plaintiffs were no longer the Trustees of the Wareham Free Library.  See Complaint, ¶¶ 24-26.  At their weekly meeting on July 24, 2007, Defendants declared that Plaintiffs were no longer the duly appointed Library

Trustees and voted to begin the process of selecting and appointing new Trustees. Plaintiffs have sufficiently alleged that Defendants acted "under color of state law." Fitzgerald v. Barnstable School Committee, 504 F.3d 165, 176 (1st Cir. 2007) (municipal officials are considered state actors for purposes of § 1983 claim).

As to the second element, Plaintiffs claim that the Defendants' action violated Plaintiffs' constitutionally protected rights, including their rights to free speech and procedural due process. These claims are addressed separately below.

## II. **FREEDOM OF SPEECH**

The facts and circumstances leave little doubt that Defendants acted against Plaintiffs in direct and bold retaliation for their participating in a successful grassroots opposition in Spring 2007 to an unusually large and disproportionate cut in the library budget, which was supported by the Selectmen. The proposed cut in the library funding was 54%. See Complaint, ¶¶ 17-20. When Town Meeting rejected the proposed budget cut, Defendants publicly accused Plaintiffs of "stacking" the Town Meeting, mounting a vindictive campaign of criticism of the Trustees that culminated in Defendants' declaring that Plaintiffs no longer served as the Library Trustees. Id., ¶¶ 21-26. The basis for Plaintiffs' First Amendment claim is retaliation for the exercise of the rights to free speech and association.

A core underlying dispute in this case is a state law issue of whether the Board of Library Trustees is a private or public entity, or a hybrid of both. Plaintiffs are the duly appointed and serving Trustees of a *private non-profit* corporation, Wareham Free Library, Inc., first established in 1891, and never challenged by the Selectmen or anyone else until July 2007. See Complaint,

3

¶¶ 14, 15. By reason of the Library's partial integration into the Town of Wareham government system during the last thirty years, the Library has become a public/private hybrid and the Library Trustees serve in a mixed public/private capacity. Id., ¶¶ 9-14. Defendants attempt to categorize Library Trustees as a purely public "multi-member body" under the 1977-enacted Town Charter. By doing so, Defendants would purport to confer upon themselves the sole authority to remove and appoint the Trustees. See Defendants' Counterclaim, ¶¶ 25-31, 107-115, Prayer for Relief (B). For purposes of Plaintiffs' First Amendment claim, whether the Trustees act in a private or public capacity, or a blend of the two, they may *not* be retaliated against by Defendants for legitimate exercise of their constitutional right to free speech. Arguably, the elements of Plaintiffs' claim would be slightly different depending on their status as private parties or public officials. In either case, however, Plaintiffs have alleged sufficient facts to state a claim under § 1983.

"Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983. Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004) (citations omitted). Retaliation claims are cognizable where made by private persons and by public officials alleging retaliatory employment action. See generally Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977). E.g. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005) (claims by private parties), and Powell, supra, 391 F.3d at 16-17 (claims by public employees).

In order to state a prima facie claim of First Amendment retaliation in the First Circuit, a plaintiff must demonstrate "that his conduct was constitutionally protected, and that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision." Powell,

4

supra, 391 F.3d at 17 (internal quotation marks omitted), citing Mt. Healthy, supra. This standard has been alternatively formulated as follows: "plaintiff must demonstrate that (1) the speech was constitutionally protected; (2) he suffered an adverse decision; and (3) there was a causal connection between the speech and the adverse determination against him, so that it can be said that his speech was a motivating factor in the determination." Shaheed-Muhammad v. Dipaolo, 393 F.Supp.2d 80, 105 (D.Mass. 2005) (internal formatting omitted). See also Cariglia v. Bar Counsel, 442 Mass. 372, 379, 813 N.E.2d 498 (2004) (same formulation). Plaintiffs have made sufficient allegations in their Complaint to establish each element of a prima facie claim of First Amendment retaliation.

First, Plaintiffs in this case engaged in constitutionally protected conduct — speaking out and associating with the co-defendant in counterclaim Friends of the Wareham Free Library, Inc.[1] (a non-profit corporation founded for the support the Library), which in Spring 2007 organized a successful opposition to the proposed budget championed by the Selectmen. See Complaint, ¶¶ 19-21. Whether each individual Plaintiff in fact participated in organizing the opposition is not relevant where all Plaintiffs supported those efforts and where Defendants perceived all of them to have been actively involved. Id., ¶¶ 20, 21. See e.g. Kusper v. Pontikes, 414 U.S. 51, 56-57, 94 S.Ct. 303 (1973) (freedom to associate with others for the common advancement of political beliefs and ideas is protected by the First Amendment); New York Times Co. v. Sullivan, 376 U.S. 254, 259, 84 S.Ct. 710 (1964) (the maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people is a fundamental principle of our constitutional system); Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S.Ct. 669 (1966) (criticism of

---

[1] It is to be noted that the Selectmen, purporting to act for the Town of Wareham, counterclaimed against two other organizations, the Friends of the Library and the Library Foundation, after the Trustees brought this case. This in itself reflects the retaliatory animus on the part of the Selectmen.

government is at the very center of the constitutionally protected area of free discussion). "State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928 (1987).

Second, Defendants took adverse action against Plaintiffs by declaring them non-Trustees, thereby effectively removing them from the Board of Library Trustees. See Complaint, ¶¶ 25, 26. Defendants do not dispute that they took that action. See Counterclaim, ¶¶ 34, 35. As provided for in the library corporation's by-laws, Plaintiffs were appointed by a three-member appointing committee consisting of the Wareham Town Moderator, the Chairman of the Board of Library Trustees and the Chairman of the Board of Selectmen. See Complaint, ¶¶ 13-15. Nevertheless, in July 2007, the Selectmen declared that new Trustees would be appointed by Selectmen alone, and that Plaintiffs were to turn over the private corporation's funds to the Town. See Complaint, ¶¶ 25-27; Counterclaim, ¶¶ 34-39, Requests for Relief (B)(3) and (C). Defendants then "invited" Plaintiffs to submit to the Selectmen new applications for re-appointment. See Counterclaim, ¶ 36. The message was clear: the Trustees would now have to answer to the Selectmen. Defendants' action was aimed at either eliminating, or at best subduing Plaintiffs, and therefore constituted an adverse action. See generally Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 500 (4th Cir. 2005) (for the purposes of a First Amendment retaliation claim under § 1983, plaintiff suffers an adverse action if defendant's retaliatory conduct would likely deter "a person of ordinary firmness" from the exercise of First Amendment rights). See also Cariglia, supra, 442 Mass. at 379 (plaintiff must allege that he or she was subjected to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights").

6

Third, Plaintiffs sufficiently allege that their constitutionally protected activities were the cause and the "motivating factor" for Defendants' retaliatory action. Following Town Meeting in April 2007, Defendants publicly accused Plaintiffs of "stacking" Town Meeting and began its vindictive campaign against Plaintiffs. See Complaint, ¶¶ 19-20, 21-26. These allegations are sufficient to support a claim of First Amendment retaliation. See Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003) ("[plaintiff] is not required to come forward with direct evidence (the so-called smoking gun) that his speech was a substantial or motivating factor, but rather, as in other contexts where motivation is an issue, he can rely upon circumstantial evidence"). See e.g. Rolf v. City of San Antonio, 77 F.3d 823, 827-28 (5th Cir. 1996) (claim that city retaliated against landowners by seeking to condemn their land in retaliation for opposing plan to build a reservoir stated a claim under § 1983 based on violation of First Amendment).

To the extent Plaintiffs were public officials, public employees retain the First Amendment right to speak out as citizens on matters of public concern, so long as their speech does not unduly impede the government employer's interest in the efficient performance of its public service. O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993), citing Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 (1968). Accordingly, public employees may not be discharged, demoted, or disciplined for their political activities or beliefs (unless political affiliation or belief is an appropriate job qualification for the particular position). Id., 994 F.2d at 909.

In order to prevail on a claim under § 1983 based on violations of the First Amendment, a public employee must establish that: "(1) his expression involved matters of public concern; (2) his interest in commenting upon those matters outweighed [his public employer's] interests in the efficient performance of its public services; and (3) his protected speech was a substantial or motivating factor in [his public employer's] adverse employment action." Lewis, supra, 321

7

F.3d at 218 (internal citations omitted). "The first two prongs are questions of law… whereas the third prong is generally for the fact finder to decide." Id. at 219. See also O'Connor, supra, 994 F.2d at 912-13; Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002). Plaintiffs here make sufficient allegations to meet this test.

First, Plaintiffs' association with Friends of the Wareham Free Library and participation (actual or perceived) in organizing and voicing opposition to the proposed town budget in Spring 2007 (including sending letters to town residents urging them to vote against the proposed budget) involved matters of public concern. Complaint, ¶¶ 19-21. "Speech implicates a matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concern to the community." Taylor v. Town of Freetown, 479 F.Supp.2d 227, 236 (D.Mass.2007), quoting Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684 (1983). The town budget and funding of the town library to be voted on by the Town Meeting were matter of inherent political and social concern in Wareham. It is not hard to figure that citizens, and particularly private Friends of the Library and indeed the private/public Library Trustees, *should* speak out on the wisdom of a 54% library funding cut championed by the Selectmen. Plaintiffs' association with the Friends of the Library and participation in opposition to the proposed town budget deserve full constitutional protection. See e.g. Dawson v. Delaware, 503 U.S. 159, 163, 112 S.Ct. 1093 (1992) (the First Amendment protects individual's right to join groups and associate with others holding similar beliefs); Kusper, supra (freedom to associate with others for the common advancement of political beliefs and ideas is protected by the First Amendment).

Second, Plaintiffs' interest in free speech on matters of inherent public concern, such as the municipal budget, clearly outweighs any possible interest that can be alleged by Defendants in the efficient performance by Defendants of their public function. Plaintiffs' public commentary,

8

as both citizens and Trustees, deserves highest constitutional protection. There is no suggestion in this case that Plaintiffs' conduct was disruptive to the operation of the municipal government of the Town of Wareham. In no way can Defendants argue that this balancing of these competing interests weighs in their favor. Connick, supra, 461 U.S. at 150 (the burden is on Defendants on the balancing issue).

Finally, Plaintiffs have sufficiently alleged that their constitutionally protected speech and expressions were the cause and "motivating factor" for Defendants' retaliatory action. See supra, at 7.

Therefore, regardless of their status as private parties or public officials, Plaintiffs in this case have stated a valid prima facie claim of retaliation for the exercise of their First Amendment rights to free speech and association.

### III. DUE PROCESS

In order to state an actionable procedural due process claim under § 1983, plaintiff must allege facts "(1) that support a determination that plaintiff has a constitutionally protected life, liberty, or property interest, and (2) that the conduct complained of has deprived [plaintiff] of that interest without constitutionally adequate procedure." Jones-Booker v. United States, 16 F.Supp.2d 52, 58 (D.Mass. 1998), citing PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). This claim is separate and independent from Plaintiffs' claim of retaliation for the exercise of the First Amendment rights.

Constitutionally protected interests for purposes of § 1983 procedural due process claims may include (1) property interest in continued employment and (2) liberty interest in reputation.

9

See e.g. Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71 (1st Cir. 1990) and Ventetuolo v. Burke, 596 F.2d 476 (1st Cir. 1979).

"In order to establish the existence of a property interest, the employee must demonstrate that he has a legally recognized expectation that he will retain his position. Such an expectation may derive from a statutory job classification, a provision in the contract of employment (express or implied) or an officially sanctioned rule of the workplace." Ortega-Rosario, supra, at 74; also Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (same). An employee has a legitimate claim of entitlement to his position if he can be discharged only "for cause," but not if he holds his position "at will;" whether a dismissal is allowed solely "for cause" is a matter of state law. King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir.1997).

Plaintiffs have alleged sufficient facts to establish the existence of a protected property interest in the continued service on the Board of Library Trustees. All Plaintiffs were appointed for the terms of three years by a three-member appointing committee consisting of the Wareham Town Moderator, the Chairman of the Board of Library Trustees, and the Chairman of the Board of Selectmen, in accordance with the 1979 by-laws of Wareham Free Library, Inc. See Complaint, ¶¶ 13-15, Exhibits B and C. The by-law provision for a fixed three-year tenure created legitimate expectation that Plaintiffs would retain their positions for the duration of their terms. See e.g. Benoit v. Weld, 804 F.Supp. 393, 396-97 (D.Mass.1992). Furthermore, to the extent Plaintiffs were public officials, the procedure for their removal would be controlled (in the absence of any controlling by-laws provisions) by the Town Charter, which states that any appointed officer of the town, not subject to the provisions of the civil service law, whether appointed for a fixed or an indefinite term, may be removed or suspended from his duties only (1) by the appointing authority and (2) in accordance with the procedure proscribed by the Charter, which requires the appointing

authority to give "a written notice of the intent to remove and a statement of the cause or causes therefore" to the officer and conduct a public hearing if the officer requests. See Town Charter, Section 7-9 "Removals and Suspensions," attached as Exhibit 1. Therefore, under the Charter, Plaintiffs could be removed only for cause after a public hearing and only by the three-member committee that appointed them. Thus, they had a legitimate, constitutionally protected property interest in their positions as the Library Trustees, sufficient to state an actionable procedural due process claim under § 1983.

The employee may also have a protected liberty interest in reputation. "[While] damage to one's reputation by a governmental official, standing alone, does not work a deprivation of liberty protected by the Fourteenth Amendment, governmental action altering a right or status previously held under state law, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards." Metivier v. Town of Grafton, 148 F.Supp.2d 98, 107 (D.Mass.2001), citing Rodriguez de Quinonez v. Perez, 596 F.2d 486, 489 (1979) ("To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized, but also stigmatized in connection with a denial of a right or status previously recognized under state law."). Where governmental action alters plaintiff's employment status, damage to reputation constitutes depravation of a protected liberty interest. E.g. Cronin v. Town of Amesbury, 895 F.Supp. 375 (D.Mass.1995).

In order to establish a protected reputational liberty interest in connection with continued employment, employee must demonstrate that government employer either (1) "made any charge against him that might seriously damage his standing and association in the community," or (2) "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Ventetuolo, supra, 596 F.2d at 482-83. Under some circumstances,

11

a protected liberty interest may be implicated even if employee did not have a protected property interest in continued employment. Ortega-Rosario, supra, 917 F.2d at 74.

Plaintiffs have alleged sufficient facts to establish the existence of a protected reputational liberty interest in connection with their service on the Board of Library Trustees. Plaintiffs have been stigmatized by the Town of Wareham by Defendants' numerous official and unofficial false public accusations suggesting dishonesty and other malfeasance by Plaintiffs, which accusations were made in conjunction with Defendants' actions denying Plaintiffs' status as the Trustees of the Wareham Free Library, a status previously recognized and never challenged by anyone until July 24, 2007. See Complaint, ¶¶ 13, 25, 31, 32. By way of example, Plaintiffs refer the Court to excerpts from the local press over the past six months, attached as Exhibits 2, 3, 4, 5, 6, and 7, identifying various accusatory false statements made by Defendants about Plaintiffs and the public reaction to them. Those statements included accusations that Plaintiffs had misappropriated public funds and threats to take "appropriate actions" against them, including by reporting them to the Attorney General's office, to the Ethics Commission, and other "appropriate state agencies." See Exhibits 3, 4, and 7. The threats and accusations resulted in damage to Plaintiffs' reputation in the community (to the extent that some reporters have suggested that Plaintiffs might be indicted, Exhibits 4, 5, and 7), and were connected to Defendants' denial of Plaintiffs' status as the duly appointed Library Trustees. See Complaint, ¶¶ 25-27. Also Exhibit 2.

It must be separately noted and emphasized here that Defendants also attempted, though did not succeed, to deprive Plaintiff Wareham Free Library, Inc., a private non-profit corporation, of a separate constitutionally protected property interest in the private funds donated to Plaintiff over the years. See Complaint, ¶¶ 27-30. Defendants' demand that those funds be turned over to the Town was made at the time of and in conjunction with their action to disband the Trustees on

12

July 24, 2007.  Id., ¶ 27.  When Plaintiffs refused to comply with that illegal demand, Defendants started making false public accusations that Plaintiffs misappropriated "public funds," going as far as to publicly suggest that Plaintiffs had engaged in "money laundering" through the Library Foundation and would be reported to the Attorney General and other appropriate state agencies. See Exhibits 3, 4, 6, and 7.  Again, those allegations could, and in fact did, inflict serious damage on Plaintiffs' "standing and association in the community" and were also connected to a denial of a previously recognized right — here, the right to hold and manage privately donated funds for the benefit of the Library, as the Trustees had always done before.  See Complaint, ¶¶ 9, 10, 12, 28, 29.  Also Exhibit 2.

Therefore, under the circumstances of this case, damage to Plaintiffs' reputation amounts to depravation of a protected liberty interest, as Plaintiffs were stigmatized in connection with the denial or attempted denial of their constitutionally protected property rights.

As to the second element of Plaintiffs' procedural due process claim, the facts in this case clearly establish that Plaintiffs were deprived of their protected property and liberty interests without a "constitutionally adequate procedure."  See Jones-Booker, supra, 16 F.Supp.2d at 58. Plaintiffs were not given any hearing or any opportunity to respond to Defendants' actions at the July 24, 2007 meeting of the Board of the Selectmen.  See Wojcik v. Massachusetts State Lottery Commission, 300 F.3d 92 (2002) (in the context of public employee's due process challenge to termination of his employment, minimum amount of due process includes some kind of hearing and some pre-termination opportunity to respond).  To the extent Plaintiffs were public officials, they were also entitled to a notice of the intent to remove them and to a public hearing under the Town Charter.  See Exhibit 1.  Instead, Defendants asked Plaintiffs to attend a regular meeting of the Board of Selectmen, noticing on their agenda the subject of the meeting as "appointment of

Library Trustees," and then suddenly declared at the meeting that Plaintiffs were no longer the duly serving Library Trustees and voted to begin the process of selecting and appointing new Trustees. See Complaint, ¶¶ 24-26. Defendants acted by ambush, without giving Plaintiffs any opportunity to respond to their actions, and yet apparently trying to maintain an appearance of due process by inviting Plaintiffs to attend their meeting.

Under the circumstances, Plaintiffs have clearly established a prima facie procedural due process claim under § 1983.

IV.   **DEFENDANTS' OFFICIAL CAPACITY**

Plaintiffs can state their § 1983 claim in this case against the municipal Defendants both officially and individually.

Municipality may be held liable under § 1983 where the act that gives rise to the cause of action is a result of an official policy or custom. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). Municipality may be held liable for such acts by at least two methods: when deprivation of constitutional rights results (1) from decisions of its duly constituted legislative body, or (2) from decisions of those officials whose acts may fairly be said to be those of the municipality. Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997).

In this case, the Selectmen have the final policy-making authority in the Town of Wareham and their actions can be fairly said to be those of the Town itself. Welch v. Paicos, 66 F.Supp.2d 138, 179-180 (D.Mass. 1999) (town board of selectmen and town administrator were highest elected and appointed officials in town, and thus their decisions created town policy such that town could be held liable under § 1983 for their decisions). Even a single decision of the Selectmen

14

can be sufficient to establish an unconstitutional municipal policy for purposes of § 1983 municipal liability if their action was a result of a deliberate choice to follow a particular wrongful course of conduct. Ibid. See also Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002), citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986) (when a particular course of action is directed by those who establish governmental policy, municipality is equally responsible under 42 U.S.C.A. § 1983 whether that action is to be undertaken only once or to be taken repeatedly). In the instant case, Defendants' actions were clearly sufficient to impose liability on the Town under § 1983. See Welch, supra, at 179-180.

## V. CONCLUSION

Plaintiffs submit to the Court that they have stated sufficient factual and legal basis upon which their Federal claim under 42 U.S.C. § 1983 can be maintained.

PLAINTIFFS /
DEFENDANTS IN COUNTERCLAIM /
THIRD PARTY PLAINTIFFS

By Their Attorneys,

/ S /  Timour Zoubaidoulline
_____
Philip N. Beauregard, BBO # 034870
Timour Zoubaidoulline, BBO # 656212
BEAUREGARD, BURKE & FRANCO
32 William Street, New Bedford, MA 02740
Tel. 508-993-0333
bbf.robeson@verizon.net
bbf.tzoubaidoulline@verizon.net

Dated:  February 19, 2008

**CERTIFICATE OF SERVICE**

       In accordance with the Electronic Case Filing ("ECF") Administrative Procedures of the United States District Court for the District of Massachusetts, I, Timour Zoubaidoulline, hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and that paper copies will be sent to those indicated as non-registered participants by first class mail on February 19, 2008.

       / S /  Timour Zoubaidoulline
       _____
       TIMOUR ZOUBAIDOULLINE, BBO # 656212