UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11807 RGS

WAREHAM FREE LIBRARY, INC., and )
PRISCILLA PORTER, MARY NYMAN, HAZAL TABER, )
MICHELLE BAUM, SANDRA WHEELER, JOHN LANCI, )
MARTHA MAGUIRE, YELENA FARIOLI-BEAUPRE, and )
DIANE LAZARUS, Individually and As Trustees of )
Wareham Free Library, Inc. )
    Plaintiffs, )
)
v. )
)
THE TOWN OF WAREHAM, )
    Defendant/Plaintiff in Counterclaim, )
)
and )
)
BRENDA ECKSTROM, BRUCE SAUVAGEAU, )
JOHN CRONAN, JAMES POTTER, and M. JANE )
DONAHUE, Individually and As members of the Board of )
Selectmen of Wareham, )
    Defendants )
)
v. )
)
FRIENDS OF THE WAREHAM FREE LIBRARY, INC., )
    Defendant in Counterclaim, )
)
v. )
)
MASSACHUSETTS INTERLOCAL INSURANCE )
ASSOCIATION, )
    Third Party Defendant. )
)

## TOWN OF WAREHAM DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING THEIR CONSTITUTIONAL CLAIMS

The Selectmen have taken no action against the plaintiffs in so far as they act as trustees of their private non-profit. Rather, the Selectmen simply pointed out to the plaintiffs that the manner of their appointment, derived from their

own private corporation by-laws, did not conform to the Wareham Town Charter, the town by-laws or the General Laws. Accordingly, the plaintiffs are not employees of the Town of Wareham or public officials of the town with a property interest in their employment. Rather, they sit as non-paid trustees of a private trust whose mission is to benefit the Wareham Free Public Library. Plaintiffs frame the controversy as follows: "A core dispute in this case is a state law issue of whether the Board of Library Trustees is a private or public entity, or a hybrid of both." Plaintiff's Memorandum at p. 3. In order to appreciate how this confusion came about, it is helpful to understand the history of the Wareham Free Public Library, about which there is no serious dispute.

In 1891, the Wareham Free Library, Inc. was incorporated as a domestic non-profit whose mission was to support a reading room in Wareham for the benefit of Wareham's residents. The corporation had no affiliation with town government. In approximately 1908, benefactor Esther Tobey made a substantial donation to the corporation to construct a library building on donated land in memory of her son. That library came to be known as the Tobey Library. The Wareham Free Library, Inc., acting through its trustees, operated and maintained the Tobey Library for decades. The plaintiffs are the successor trustees of that private corporation.

By the early 1970s, the Tobey Library was in need of repair and renovation. The Town of Wareham appropriated public funds which were then used for that purpose, but the library building and assets remained in the private hands of the Wareham Free Library, Inc. In 1976, the Wareham Free Library, Inc. presented the Town with a plan to further renovate and expand the library with federal grant funds. As it turned out, the Town was ineligible to receive those

2

grants because the Town did not own title to the library building. In 1977, Wareham adopted its Town Charter and in that same year it voted to incorporate the library employees (not the trustees but the actual librarians) into the town payroll to be treated as salaried town employees. So began a transition of the library facilities and operations from a purely private library open to the public, to a library publicly financed and maintained. In 1979, the Wareham Free Library, Inc. amended its by-laws in respect to the appointment of its trustees. Since that amendment, the trustees of the Wareham Free Library, Inc. have been appointed by a three-member panel consisting of: the Chairman of the Board of Trustees of the Wareham Free Library, Inc., the Chairman of the Wareham Board of the Selectmen, and the Wareham Town Moderator. The plaintiffs were appointed in this manner.

In 1991, a new library building was constructed with public funds and built on public land and the Tobey Library building ceased operations. The books and other materials that had been housed in the Tobey Library were transferred to the new publicly owned facility. Thereafter, the Wareham Free Library, Inc. trustees continued to hold and receive private donations for the benefit of the 'Wareham Free Library' even though that library was now unquestionably owned and maintained by the Town of Wareham and not the private charity that had owned and maintained the Tobey Library.

Massachusetts General Laws c. 78, § 10 provides for the creation and appointment of a board of trustees for a publicly funded library and reads as follows:

> A town which raises or appropriates money for the support of a free public library, or free public library and reading room, owned by the town, shall, unless the same has been

3

> acquired entirely or in part from some gift or bequest that which contains other conditions or provisions for the election of its trustees, or for its care and management which have been accepted by the town, elect by ballot at a meeting a board of trustees consisting of any number of persons, male or female, divisible by three, which the town determines to elect. . . . The board shall, from its own number, annually choose a chairman and secretary and, if the town so votes, a treasurer, who shall give a bond similar to that given by the town treasurer, in an amount and with sureties to the satisfaction of the selectmen. Until the town otherwise directs the town treasurer shall act as treasurer of the board of trustees.

G.L. c. 78, § 10. The Town of Wareham appropriated money for a new library and built a new facility on Wareham public land in 1991. That library is "owned by the town" and was not acquired by some gift or bequest that included "conditions or provisions for the election of trustees, or its care or management which have been accepted by the town[.]" Id.

In approximately July, 2007, after the Board of Selectmen was advised by town counsel that the private trustees of the Wareham Free Library, Inc. were not appointed in a manner that would allow them to also hold positions as public trustees of the public library pursuant to c. 78, § 10, the Selectmen brought the issue to the plaintiffs attention. A copy of town counsel's opinion letter is attached at Exhibit A. The Selectmen also asked that the plaintiffs share their financial records with the Town Treasurer and that the Town Treasurer act as treasurer of any funds received for the benefit of the new public town library until and unless the Town voted to approve the trustees to elect their own treasurer as mandated by G.L. c. 78, § 10. The plaintiffs refused. They claimed (and continue to claim) that as trustees of a private corporation they are not bound or confined by the Town Charter or the town by-laws. Although their own corporate by-laws declare that they are organized pursuant to G.L. c. 78, §

4

10," they claim not be bound by that statute. This two-headed approach allows room for the plaintiffs to argue on the one hand that their private affairs are not the concern of the Selectmen and then argue on the other hand that they have a property interest in their 'quasi-public' positions as library trustees triggering due process.[1] All that the defendants have done is to treat the plaintiffs as trustees of their private corporation but not as publicly recognized trustees of the Wareham Free Library because they were not appointed to those public positions in accordance with either G.L. c. 78, § 10, the Wareham Town Charter, or the town by-laws.

The most closely analogous case to the present dispute is found in Mullin v. Town of Fairhaven, 284 F.3d 31 (1st Cir. 2002)(Stearns, J. en panel sitting by special designation). The plaintiffs in Mullin were certain unpaid members of the Town of Fairhaven Conservation Commission. The Board of Selectmen of Fairhaven sought to remove the plaintiffs from their positions on the Commission because the plaintiffs had voted in mid-term to rearrange the makeup of their office holders (chairman and co-chairman) notwithstanding a town by-law that called for the election of such offices only at the beginning of each term. The Fairhaven Board of Selectmen were advised by town counsel that the plaintiffs actions were unlawful under the by-laws and counsel's opinion letter was shared by the Board with the plaintiffs who still refused to undo the

---

[1] At times in their brief they maintain that they are solely private actors. Plaintiff's Memorandum at p. 3 ("Plaintiffs are the duly appointed and serving Trustees of a *private non-profit* corporation.")(emphasis in original). At other times, they claim the mantle of town employees entitled to due process before their 'employment' can be terminated. Id. at p. 7 (urging that plaintiffs be considered "public employees" for purposes of constitutional analysis). They have also sued the Town's insurer claiming entitlement to coverage as town employees to defend the town's cross-claims.

5

unlawful reorganization. Plaintiffs then sued the Town and alleged that the Selectmen's motive in removing them from the Commission was to retaliate against them for positions and votes they had taken on matters of public concern. A judge in the district court (Tauro, J.) after hearing only the plaintiffs' evidence, entered judgment for the Town and wrote this:

> Under any circumstance I think the Board of Selectmen had the authority to give fair warning that they felt that the by-laws are being violated. They gave an opinion of counsel to that effect. And the Commission persisted in its position. And I think that that justified a removal for cause which was within the authority of the Board of Selectmen.

Mullins, 284 F.3d at 36. The First Circuit Court of Appeals reviewed the district court's decision *de novo* and affirmed. Notably, the First Circuit upheld the judgment against the plaintiffs without reaching the issue of whether the plaintiffs' speech was a motivating factor in the Board's decision. Id. at 41. The fact that certain members of the Commission refused to follow the town by-laws when it came to the make-up of the Board was enough to justify their removal irrespective of any other motivation by the Selectmen tethered to their First Amendment rights. For substantially the same reasons, even viewed in the light most favorable to the plaintiffs, the First Amendment aspect of their claim is, under any circumstances, outweighed by the Board of Selectmen's legitimate interest in seeing to it that any public trustees of the library (as opposed to the plaintiffs' private trustee status that the Board does not take issue with) are appointed and serve in accordance with the law.[2]

---

[2] The Selectmen *invited* the plaintiffs to apply for these positions through the proper procedure. They provided the plaintiffs with a way for them to achieve the status of public trustees they so desire. But plaintiffs' umbrage at the suggestion that they were not, all along, the trustees of anything more than their private non-profit seemingly got

6

I.  **The Selectmen's Obligation to Govern Wareham in Accordance with the Law Far Outweighs the Plaintiffs' Asserted First Amendment Concerns.**

The members of the Wareham Board of Selectmen are public officials with their own First Amendment rights. The analytic framework the Court must employ in determining "the scope of First Amendment protections applicable to public officials" is a three-part test. Id. at 37, *citing* Mt. Healthy City Sch.Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274 (1977) and Pickering v. Bd of Educ. 391 U.S. 563 (1968). First, the Court must consider whether the plaintiffs' speech involves "matters of public concern." Connick v. Meyers, 462 U.S. 138, 147-48 (1983). The plaintiffs urge that the Selectmen only looked into the manner of their appointments after a public debate over the Town budget's allocation for the public library. The library funding was one of many items in the proposed town budget. The Town's annual financial resources are or course limited and the amount of funds devoted to one public service in Wareham directly impacts the amount of funds available to provide other services. While the Town defendants deny that the debate over the library budget in fact motivated them at all, they concede, for purposes of argument, that the debate over the town budget, including the library's portion, was a matter of public concern. That concession however, does not end the matter.

The second prong of the *Pickering* analysis requires the Court to "balance the strength of plaintiffs' and the public's First Amendment interests against the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide

---

the best of them. Rather than apply for the positions of public trustees in accordance with the law, they sued.

through its public officials." Mullins v. Fairhaven, 284 F.3d at 37 (internal quotation omitted). Stated differently, in order to survive the second prong of the *Pickering* analysis, the plaintiffs' interests in expressing their views about the town library budget must outweigh the Selectmen's interest in seeing to it that the Town's by-laws and Town Charter, as well as the General Laws of the Commonwealth as they pertain to the appoint of public library trustees, are followed. As was the case in Mullins, *supra*, "the Town undoubtedly has a vital interest in enforcing compliance with its bylaws[.]" Id. at 40. The Town had a sound legal basis for its conclusion that the private trustees of the private non-profit Wareham Free Library, Inc. established in 1891, were not appointed to hold public positions as trustees of the public library in accordance with the Town by-laws that govern multi-member bodies. Instead, the plaintiff trustees were appointed pursuant to the terms of their own private corporation's by-laws.[3]

G.L. c. 78, §10 requires that any public library board of trustees be comprised of a number of persons divisible by three. Thus, any public library trusteeship must be a 'multi-member' body in order to comply with G.L. c. 78, § 10. The Town Charter provides that appointments to any multi-member body of the town government, unless some other mechanism of appointment is provided in the by-law, are to be made by the Board of Selectmen. The by-law is silent on the manner of appointment of library trustees. Following this logic, the

---

[3] The plaintiffs here could conceivably alter the manner of appointment of trustees by simply amending the by-laws of their private charity without regard to the Wareham Town Charter, the town by-laws or the General Laws. Such a result underscores the concern that the Town defendants had when they were advised by Town counsel that the plaintiffs were not properly appointed to any public or quasi-public position.

8

Selectmen, with the advice of town counsel, took the position that the private trustees did not hold public office.

Defendants respectfully suggest that no private corporation trustee with a modicum of firmness would be dissuaded from speaking out about the library budget because the Board of Selectmen, with the support of an opinion from town counsel, pointed out the law.  Telling a trustee of a private non-profit corporation that she is not also a public official unless and until her appointment as a public official comports with the law is hardly conduct that would deter "a person of ordinary firmness" from exercising their right to free speech. Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 500 (4th Cir. 2005).  In reality, the brew-ha over this issue has led to more speech in Wareham, not less.  The plaintiffs' hyperbolic assertion of "chilled speech" weighs little.   Balancing the plaintiffs' inflated and largely imagined Free Speech concerns against the legitimate concerns of the Board of Selectmen in seeing to it that the by-laws of the Town and the Town Charter are followed, the plaintiffs interest must yield.  Far weightier is the Town's legitimate obligation to ensure that the public library trustee appointments are made in accordance with law.

Because the balance of interests weighs heavily in the defendants favor, the Court need not decide the third prong of the *Pickering* analysis.  Mullin v. Town of Fairhaven, 284 F.3d 31, 41 (1st Cir. 2002)(once court concludes that defendants interests outweigh plaintiffs, "First Amendment inquiry ends, and [the Court] need not reach the final step of the three-part test[.]")

## II. Plaintiffs' Due Process Claim is Misplaced as Plaintiffs Have No Property Interest in the Public Trustee Positions They Have Never Legitimately Held.

Plaintiffs next argue that they are entitled to recover pursuant to 42 U.S.C. § 1983 because the Town defendants allegedly deprived them of a property interest in their positions as library trustees. "To have a property interest in a benefit, a person clearly must have more than an abstract need for it. He must have more than a unilateral expectation of it. He must, instead, have a <u>legitimate</u> claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972)(emphasis added). The plaintiffs are not now, and have never been, properly appointed to serve as public trustees of the Wareham Public Library that was built in 1991 with public money and which sits on public land. Plaintiffs are the trustees of a private non-profit (see plaintiff's memorandum at p. 3). Plaintiffs receive no pay and take no direction whatsoever from the Town defendants – and they never have. It is axiomatic that the defendants could not have taken something from the plaintiffs that the plaintiffs never possessed. What the town defendants have merely done is to ask the private trustees, if they wish, to follow the proper procedure for appointment of public library trustees if they desire to hold those positions as well.

Defendants have not "alter[ed] a right or status previously held under state law[.]" Metivier v. Town of Grafton, 148 F.Supp. 2d 98, 107 (D. Mass. 2001). Nor have they "stigmatized" the plaintiffs by drawing to their attention their mistaken belief that they hold some undefined and amorphous (or as plaintiffs say 'quasi-public/private') office. Nowhere in the Wareham Town Charter or the town by-laws or the laws of the Commonwealth is there any authority for the establishment of a 'quasi-public/private' body of this type. Accordingly, the

plaintiffs cannot have been deprived of a status previously held under state law because there is no such cognizable right or status.  *Compare* Cronin v. Town of Amesbury, 895 F.Supp. 375 (D.Mass. 1995)(tenured police chief had property interest in his job).   Moreover, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists."  Reid v. State of New Hampshire, 56 F.3d 332, 340-41 (1st Cir. 1995).   Here, the plaintiffs seek a declaration that under state law they are the legitimate *public* trustees of the Wareham Public Library notwithstanding the concerns raised by the Selectmen and town counsel.  Such a declaration, if made, would effectively end the matter and is thus an adequate remedy negating the plaintiffs' due process claim.

For the reasons set forth above, the defendants respectfully suggest that the plaintiffs have not set forth averments of fact in either their Complaint or in their Memorandum of Law that adequately set forth a federal civil rights claim.

Respectfully submitted,

TOWN OF WAREHAM,
BRENDA ECKSTROM, BRUCE SAUVAGEAU, JOHN CRONAN, JAMES POTTER, and M. JANE DONAHUE, Individually, and as Members as the Board of Selectmen of Wareham
By their attorneys,

    /s/ *Peter E. Montgomery*
Leonard H. Kesten, BBO#542042
Peter E. Montgomery, BBO#632698
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116

CERTIFICATE OF SERVICE

I, Peter E. Montgomery, of the law firm of Brody, Hardoon, Perkins & Kesten, LLP, do hereby certify that on March 4, 2008, I electronically filed the foregoing document with the Clerk of the District Court using the CM/ECF system which would then notify the following CM/ECF participants in this case:

Philip N. Beauregard, Esq.
Timour Zoubaidoulline, Esq.
Beauregard, Burke & Franco
The Andrew Robeson House
P.O. Box 952
32 William Street
New Bedford, MA 02741

Elizabeth R. Corbo, Esq.
George X. Pucci, Esq.
Jonathan M. Silverstein, Esq.
Kopelman & Paige, P.C.
101 Arch Street
Boston, MA 02110

Thomas J. Gallitano, Esq.
Lurleen A. Manning, Esq.
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109

Arthur E. Maravelis, Esq.
TANG & MARAVELIS, P.C.
50 Mall Road, Suite 111
Burlington, MA 01803

/s/Peter E. Montgomery
Peter E. Montgomery, BBO#632698

DATED: March 4, 2008